

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN 11, TEXAS

WILL WILSON
ATTORNEY GENERAL

January 6, 1959

Mr. L. R. Noyes, Executive Director
Livestock Sanitary Commission of Texas
3320 West Seventh Street
Fort Worth 7, Texas

Opinion No. WW-538

Re: Whether or not, in the en-
forcement of Section 26,
Article 1525b, Vernon's
Penal Code, the Commis-
sion is liable for any death
loss or shrinkage in weight
that may occur while live-
stock are detained for treat-
ment, tests or vaccination,
and related questions.

Dear Mr. Noyes:

This opinion is written in response to your letter of September 9,
1958, and your additional letter of September 19 in response to my telephone
conversation with you of September 18.

The questions you have asked are as follows:

"In the enforcement of this provision of the statutes,
this Commission would like to have an Opinion, whether it
would be liable for any death loss or shrinkage in weight
that may occur while livestock are detained for treatment,
tests or vaccination.

"In the event the driver of the truck, who is not
usually the owner of the animals, unloads them and makes
no arrangements for feed, water and required tests, may
the Sheriff or any peace officer of the County in which the
livestock are intercepted impound and levy a lien for the
purpose of securing payment of expenses and costs of
handling the animals?

"We should also like to know if the Sheriff or Consta-
ble of the County in which the livestock are apprehended
may impound the animals and levy a lien to cover fines and
court costs that may be assessed for the violation of our
requirements."

Since all of these questions pertain to interstate shipments under Section 26 of Article 1525b, Vernon's Penal Code, this Section will be quoted in full and your questions answered in their respective order.

"Quarantine of foreign shipments in violation of act

"Sec. 26. Whenever any live stock, canines, or fowls are moved or permitted to move into the State of Texas in violation of any quarantine established under any provision of this Act or of any other Live Stock Sanitary Law or in violation of any provisions of this Act or of any Live Stock Sanitary Law or are moved from any place in the State of Texas in violation of any quarantine established under this Act, it shall be the duty of the Live Stock Sanitary Commission to quarantine said live stock, canines or fowls wherever found and enforce said quarantine until said live stock have been properly treated or vaccinated or tested, dipped or otherwise disposed of as may be provided for in the rules and regulations of the Live Stock Sanitary Commission. The provisions of this Section shall apply to all live stock, canines and fowls and to all diseases mentioned in this Act, including also scabies among cattle, sheep and goats."

In regard to your first question concerning the liability of the Commission for death loss or shrinkage in weight of livestock while they are detained for tests or vaccination, the answer is as follows:

Since the operations of the Articles coming under Chapter 14 of Vernon's Penal Code come under the police power of the State, there would be no liability on the part of the State for losses of livestock or losses of weight of livestock which are held under authority and in pursuance of these statutes. Armstrong v. Whitten, D.C. 41 Fed.2d 241, (1930). Of course, there would be no personal liability on the part of the Commissioners so long as they were acting within the authority of this act. Choate v. Renfro, 126 S.W 2d 718, (Civ.App., 1939).

In answer to your second question it is our opinion that whether the livestock may be impounded and a lien levied for the purpose of securing payment of expenses and costs of handling, depends on the type of animal and the type of disease involved.

Article 1525c, dealing with cattle, horses, mules, jacks and jennies infested with disease-bearing ticks, is very explicit in its mandates and

provides that it is the duty of the county to furnish the vats for dipping, and also that the dipping material is to be furnished by the State. It also provides in Section 13 that the owner or caretaker is liable for all expenses of bringing the cattle or other animals to and from the dipping vats. Section 15 provides that if the owner refuses to bring the animals to the county dipping vats, the State may go in and dip the cattle itself and charge the owner $2.00 a head which is secured by lien fixed on the cattle and which lien also attaches for additional expenses of hauling, feeding and watering the stock while in possession of the State for dipping. Parker v. Miller, 118 S.W.2d 380 (Civ.App., 1938), a case coming under this section, held that it would be proper for a sheriff to keep animals in his possession for satisfaction of the debt secured by the lien which arises under this article.

Under Article 1525a concerning cattle, sheep and goats infected with scabies, Section 2 provides that the Commission can direct the party controlling the animals or the owner to have them dipped and can punish for failure on the part of the owner or caretaker to dip. Section 18 states that if the owner refuses to dip, it is the duty of the County Commissioners' Court to have the animal dipped at the expense of the county. Here it would seem that the only recourse of the county to recover expenses for feed and water would be through the instigation of a suit for the fine for failure to dip and the other expenses involved.

There are other provisions dealing with a variety of diseases such as glander, bangs disease, hoof and mouth, and cholera, which do not mention the costs of handling and feeding. Since the general provisions of Section 12 of Article 1525a, state that it is the duty of the owner or caretaker to gather the animals for inspection, and since the Legislature, in House Bill 133, Acts of the 55th Legislature, 1957, Regular Session, Chapter 395 (General Appropriations), has made no provision for handling costs and feeding expenses, it is our opinion that the owner or caretaker would have to provide for these expenditures since the Commission would be unauthorized to make these disbursements.

The answer to your third question, concerning the right of the Commission to impound animals and to levy a lien to cover any fines and court costs, will likewise depend upon the particular type of livestock involved. The only Act which provides a clear answer is found in Section 25, Article 1525b, which states as follows:

> "County attorney to institute civil actions against non-residents for fines

"Sec. 25. Whenever any person who is a non-resident of the State of Texas violates any penal provisions of this Act and is absent from the State at the time of the said violation or whenever any foreign corporation which does not have a permit under the law to do business in the State of Texas violates any provision of this Act it shall be the duty of the County Attorney in any and all counties in the State of Texas wherein said violation occurs to institute a civil suit against said non-resident person or foreign corporation for the collection of the fine provided in said penal clause, and to run an attachment upon any property which said non-resident person or foreign corporation may at any time have in the State of Texas and after final judgment to have said attached property sold under execution, for the purpose of paying said fine and cost of suit. . . ." (Emphasis added).

Under Article 1525c, no such authority exists for bringing a suit to recover fines and costs of suit against a person although Section 28 does provide that a civil suit might be maintained against a corporation by the County Attorney for recovery of fines imposed for violation of Article 1525c. Since this Section refers to corporations broadly, it seems that it applies both to foreign as well as domestic corporations.

There are no other provisions dealing with animals infected with contagious diseases granting the county or other State agencies involved the right to attach livestock for payment of fines and court costs, therefore, it is our opinion that no such right exists.

## SUMMARY

The Livestock Sanitary Commission would not be liable for death loss or shrinkage in weight that may occur while livestock are detained for treatment, testing or vaccination. Under Section 26, Article 1525b, Vernon's Penal Code, whether or not the Commission will be able to impound the animals and acquire a lien for handling their feed costs or for the recovery of the fines and court costs, will depend on the type of animal and the type of disease involved.

Sincerely,

WILL WILSON
Attorney General of Texas

By Martin DeStefano
Martin DeStefano
Assistant

MD:ci:ls

APPROVED:

OPINION COMMITTEE
Geo. P. Blackburn, Chairman

Marietta Payne
Cecil C. Cammack, Jr.
Morgan Nesbitt
Riley Eugene Fletcher

REVIEWED FOR THE ATTORNEY GENERAL
BY:  W. V. Geppert